David Mara, Esq. (SB# 230498)
Jill Vecchi, Esq. (SB#299333)
Matthew Crawford, Esq. (SB#310230)
Nikki Trenner, Esq. (SB#316007)
**MARA LAW FIRM, PC**
2650 Camino Del Rio North, Suite 205
San Diego, CA 92108
Telephone: (619) 234-2833
Facsimile:  (619) 234-4048
dmara@maralawfirm.com
jvecchi@maralawfirm.com
mcrawford@maralawfirm.com
ntrenner@maralawfirm.com

Attorneys for Plaintiffs

[Additional Counsel on Next Page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN MARTINEZ on behalf of himself, all others similarly-situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>vs.<br><br>SEALED AIR CORPORATION (US), and DOES 1-100,<br><br>Defendants. | Case No. 2:18-cv-09881-DSF-GJS<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: March 16, 2020<br>Time: 1:30 p.m.<br>Judge:  Hon. Dale S. Fischer<br>Courtroom:  7D |

Marcus J. Bradley, Esq. (SBN 174156)
Kiley L. Grombacher, Esq. (SBN 245960)
Taylor L. Emerson, Esq. (225303)
**BRADELY/GROMBACHER, LLP**
2815 Townsgate Road, Suite 130
Westlake Village, California 91361
Telephone: (805) 270-7100
Facsimile: (805) 270-7589
mbradley@bradleygrombacher.com
kgrombacher@bradleygrombacher.com
temerson@bradleygrombacher.com

Walter L. Haines, Esq. (SBN 71075)
**UNITED EMPLOYEES LAW GROUP, PC**
5500 Bolsa Avenue, Suite 201
Huntington Beach, California 92649
Telephone: (562) 256-1047
Facsimile: (562) 256-1006
walter@whaines.com

Attorneys for Plaintiffs

**TO:  ALL PARTIES HEREIN AND TO THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on March 16, 2020, at 1:30 p.m. or as soon thereafter as the matter can be heard in Courtroom No. 7D of the above entitled courthouse located at 350 West 1st Street, Los Angeles, California 90012, Plaintiffs Brian Martinez and Victor Paz (hereinafter "Plaintiffs") will move this Court for an Order Granting Plaintiffs' Motion for Final Approval of Class Action Settlement. Defendant Sealed Air Corporation (US) (hereinafter "Defendant" or "Sealed Air") does not oppose this Motion.

This motion is based upon this notice, the accompanying Memorandum of Points and Authorities filed herewith; the Court's Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement; the filings on record in this case; and upon such further evidence, both documentary and oral, that may be presented at the hearing of this motion.

DATED:  January 30, 2020                **MARA LAW FIRM, PC**

                                         _/s/ David Mara_
                                         David Mara, Esq.
                                         Jill Vecchi, Esq.
                                         Matthew Crawford, Esq.
                                         Attorneys for Plaintiffs

1

## TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................... 1

II.   SUMMARY OF SETTLEMENT ............................................................ 2

III.  SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED TO .......... 3

  a.  Dissemination of Class Notices.......................................................... 3

  b.  No Objections or Requests for Exclusion Have Been Received ..................... 4

IV.  DISCUSSION ......................................................................................... 4

  a.  The Settlement Meets the Standards Governing Final Approval ................... 4

  b.  In re Bluetooth Headset Products Liability Litigation, 654 F.3d 935 (9th Cir. 2001), Factors are Not Present Here ..................................................... 5

    i.   The Settlement is Fair ................................................................. 6

  c.  Sufficient Discovery and Investigation Has Occurred.............................. 12

  d.  Class Counsel Are Experienced ........................................................ 12

  e.  The Class Members' Response to the Settlement is Further Evidence that the Settlement is Fair and Reasonable .................................................... 12

  f.   The Court Should Approve of The Settlement Administration Fee ............. 13

V.   CONCLUSION..................................................................................... 14

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Augustus v. ABM Security Services, Inc.*

4

(2016) 2 Cal.5th 257..........................................................................9

5

*Class Plaintiffs v. Seattle*,

6

955 F.2d 1268, 1276 (9th Cir. 1992)......................................................5

7

*Cortez v. Best Buy Stores*

8

(C.D. Cal. Jan. 25, 2012) 2012 WL 255345 ...........................................9

9

*Eisen v. Porsche Cars North America, Inc.*,

10

2014 WL 439006 at *3 (C.D. Cal. Jan. 30, 2014) ...............................11

11

*Gattuso v. Harte-Hanks Shoppers, Inc.*

12

(2007) 42 Cal.4th 554, 568 ...............................................................10

13

*Guinn v. Sugar Transport of the Northwest, Inc.*

14

(E.D. Cal. 2017) 2017 WL 6513306 *7 ...............................................9

15

*Hanlon v. Chrysler Corp.*,

16

150 F.3d 1011, 1026 (9th Cir. 1998)...........................................4, 5, 7

17

*Heritage Bond Litigation*,

18

2005 WL 1594403........................................................................5

19

*Hernandez v. BCI Coca-Cola Bottling Company, Inc.*,

20

554 Fed. Appx. 661 (9th Cir. 2014) ....................................................7

21

*In re Bluetooth Headset Products Liability Litigation*,

22

654 F.3d 935, 946 (9th Cir. 2011)..................................................5, 6

23

*In re MRV Communs., Inc. Derivative Litig.*,

24

2013 WL 2897874, *2 (C.D. Cal. June 6, 2013) ..................................11

25

*In re Surebeam Corp. Secs. Litig.*,

26

2004 WL 5159061 (S.D. Cal. 2004) ..................................................12

27

28

*In re Taco Bell Wage & Hour Actions*

    (E.D. Cal. 2016) 2016 U.S. Dist. LEXIS 48577 ...................................................9

*Joel A. v. Giuliani,*

    218 F.3d 132, 138 (2d Cir. 2000) ..........................................................................4

*Lane v. Facebook, Inc.,*

    2010 WL 9013059, *5 (N.D. Cal. March 17, 2010) ............................................11

*Lanzarone v. Guardsmark Holdings, Inc.*

    (C.D. Cal. 2006) 2006 WL 4393465 *7 .............................................................10

*Linney v. Cellular Alaska P'ship,*

    151 F.3d 1234, 1242 (9th Cir. 1998) .....................................................................7

*Mandujano v. Basic Vegetable Products, Inc.,*

    541 F. 2d 832, 837 (9th Cir. 1976) .....................................................................12

*Marshall v. Holiday Magic, Inc.,*

    550 F.2d 1173 (9th Cir. 1977) ..............................................................................6

*Morey v. Louis Vuitton N. Am., Inc.,*

    2014 WL 109194, *5 (S.D. Cal. Jan. 9, 2014) ...................................................11

*Officers for Justice v. Civil Service Comm. of City and County of San Francisco,*

    688 F. 2d 615, 625 (9th Cir. 1982) ...................................................................6, 7

*Stiller v. Costco Wholesale Corp.*

    (S.D. Cal. 2014) 298 F.R.D. 611, 626 ..................................................................9

*Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.,*

    2013 U.S. Dist. LEXIS 123298, *253-54 (C.D. Cal. July 24, 2013) ...................12

*Ugas v. H&R Block Enters., LLC*

    (C.D. Cal. July 9, 2012) 2012 WL 5230297 *5 ..................................................10

*Van Ba Ma v. Covidien Holding, Inc.,*

    2014 U.S. Dist. LEXIS 76359, *6-7 (C.D. Cal. 2014) ..........................................6

NOTICE OF MOTION & MOTION FOR
FINAL APPROVAL OF CLASS
ACTION SETTLEMENT
        v
        CASE NO. 2:18-CV-09881-DSF-GJS

*White v. Starbucks Corp.,*

   (N.D. Cal. 2007) 497 F.Supp.2d 1080, 1089 ........................................................9

**Statutes**

Federal Rule of Civil Procedure, Rule 23(a)(4) ..................................................12

Federal Rule of Civil Procedure, Rule 23 ..............................................................4

Federal Rule of Civil Procedure, Rule 30(b)(6) ....................................................8

1    **TO THE HONORABLE COURT AND ALL COUNSEL OF RECORD:**

2         Plaintiffs Brian Martinez and Victor Paz (hereinafter referred to as

3    "Plaintiffs"), former employees of Defendant Sealed Air Corporation (US)

4    (hereinafter "Defendant" or "Sealed Air") (collectively referred to as the "Parties"),

5    submit this Motion for Final Approval of the Class Action Settlement.

6    **I.  INTRODUCTION**

7         This motion seeks final approval of a $700,000 proposed class action

8    settlement achieved on behalf of 329 Class Members. On November 18, 2019, the

9    Court preliminarily approved the settlement and ordered the dissemination of the

10   notice of settlement to Class Members. In response to the notices of settlement, to

11   date, no Class Member has objected to the settlement or requested exclusion from

12   the settlement. Plaintiffs will be filing a Supplemental Brief in Support of Motion for

13   Final Approval on February 28, 2020. (*See* Dkt. Nos. 39-5 and 43). At that time,

14   Plaintiffs will provide the Court the final statistics regarding the number of Class

15   Members who requested to be excluded from the settlement and whether any Class

16   Members have objected to the settlement.

17        The estimated average settlement payment to each Class Member is $1,318.39

18   and the highest estimated payment is $2,242.69. (*See* Declaration of Nathalie

19   Hernandez of ILYM Group, Inc., in Support of Motion for Final Approval of Class

20   Action Settlement ("Hernandez Dec."), ⁋ 15). It should be noted that these amounts

21   include litigation costs of $35,000. As Class Counsel's actual costs were only

22   $16,672.50, these payments will increase once the settlement administrator adjusts

23   the litigation cost amount. At that time Plaintiffs' Supplemental Brief is filed,

24   Plaintiffs will provide the Court with a more precise average and high payment as

25   calculated by the settlement administrator after Class Members have had the

26   opportunity to request to be excluded from the settlement and which reflects the

27   actual litigation costs.

28

The Class Members' response as of the filing of this motion supports the Court's finding that the settlement is fair, reasonable, and adequate. For the reasons that follow, it is respectfully requested the Court grant final approval of the Parties' settlement and find the settlement to be fair, reasonable, and adequate.

## II.    SUMMARY OF SETTLEMENT

As described in the motion for Preliminary Approval and stated in the Parties' Joint Stipulation and Settlement Agreement, Defendant shall pay $700,000 (referred to as the "Gross Settlement Amount" or "GSA") which includes: (1) settlement administration costs of $15,000 (*see* Hernandez Dec. ¶ 16); (2) Class Representative General Release Payments not to exceed $7,500 each to the named Plaintiffs; (3) attorneys' fees not to exceed $175,000 (25% of the GSA); and (4) costs of $16,324.36 (originally estimated not to exceed $35,000). All of these payments are subject to the Court's approval.

After the above amounts are subtracted from the GSA, the remaining portion of the GSA – referred to as the Net Settlement Amount ("NSA") – shall be available for distribution to Participating Class Members. After subtracting the above amounts, the NSA available for individual settlement payments is approximately $478,675.64.

Each Participating Class Member will receive a proportionate share of the NSA that is equal to (i) the number of weeks he or she worked for Defendant in California, in an hourly, non-exempt position, based on the Class data provided by Defendant, divided by (ii) the total number of weeks worked by all Participating Class Members – *i.e.*, Class Members who do not request to be excluded from the settlement – based on the same Class data, which is then multiplied by the Net Settlement Amount. One day worked in a given week will be credited as a work week for purposes of this calculation. Therefore, the value of each Class Member's Individual Settlement Share ties directly to the amount of weeks that he or she worked.

As will be discussed, the settlement has been a success, with no objections to the settlement submitted by Class Members and no requests for exclusion submitted to date. The Class response and settlement shares to Class Members further demonstrate the settlement being fair, reasonable and adequate.

## III.     SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED TO

### a.  Dissemination of Class Notices

Preliminary Approval was granted on November 18, 2019. At that time ILYM Group, Inc. was appointed by the Court as the Settlement Administrator. ILYM Group, Inc. has complied with the Court's orders concerning dissemination of the Class Notice by first-class regular U.S. Mail and email.

On December 3, 2019, ILYM Group, Inc. received the class data file from Counsel for Defendant containing information for 328 individuals. (Hernandez Dec. ¶ 5). The notices of settlement were mailed and e-mailed to these 328 individuals on December 23, 2019. (Hernandez Dec. ¶ 6). On January 10, 2020, Defense Counsel advised ILYM Group, Inc. that eight (8) individuals were inadvertently included in the original class data file and should be removed. (Hernandez Dec. ¶ 7). Pursuant to the Court's Order (*see* Dkt. 43), these individuals were mailed a letter on January 10, 2020 advising them that they were inadvertently included in the class data and notifying them they are not Class Members.

Additionally, Defense Counsel advised ILYM Group, Inc. that nine (9) individuals were inadvertently excluded from the original class data file. (Hernandez Dec. ¶ 8). Notices of settlement were promptly mailed to these nine (9) individuals on January 10, 2020, bringing the total number of Class Members to 329. (Hernandez Dec. ¶ 8).

ILYM Group, Inc. re-mailed eleven (11) notices of settlement because ILYM Group, Inc. found an updated address through skip tracing. (Hernandez Dec. ¶ 10). Seven (7) notices of settlement were ultimately deemed undeliverable by U.S. Mail.

(Hernandez Dec. ¶ 11). While these notices were undeliverable by U.S. Mail, these Class Members were also provided notices by e-mail.

In addition, throughout the notice process ILYM Group, Inc. has operated a toll-free telephone number for Class Members to call with inquiries concerning the settlement.

### b. No Objections or Requests for Exclusion Have Been Received

The deadline to file an objection to the Settlement is February 6, 2020 for the individuals who were mailed notices of settlement on December 23, 2019. (Hernandez Dec. ¶ 13). The deadline to file an objection to the Settlement is February 24, 2020 for the nine (9) individuals who were mailed notices of settlement on January 10, 2020. (Hernandez Dec. ¶ 13). To date, no objections have been filed with the Court or submitted to ILYM Group, Inc. and no requests for exclusion from the settlement were received by ILYM Group, Inc. (Hernandez Dec. ¶ 13). All Class Members who do not submit a request for exclusion will receive a settlement payment. Therefore, 329 Participating Class Members are currently set to receive a Settlement Payment. (Hernandez Dec. ¶ 14).

## IV.    DISCUSSION

### a. The Settlement Meets the Standards Governing Final Approval

Matters that have been filed as class actions require court approval before a settlement can be consummated. *See* Fed. R. Civ. Proc. ("FRCP") 23(e). FRCP 23(e) provides that any compromise of a class action must receive Court approval. The Court has broad discretion to grant approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani,* 218 F.3d 132, 138 (2d Cir. 2000). In determining whether a settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Heritage Bond Litigation*, 2005

U.S. Dist. LEXIS 13555, *9 (C.D. Cal. June 10, 2005) (*citing Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

Approval of a class action settlement involves a two-step process. In determining whether to grant final approval of the settlement, a court examines the terms for overall fairness and, in so doing, balances the following factors: the strength of the plaintiff's case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed; the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; the reaction of the class members to the proposed settlement. *Hanlon*, 150 F.3d at 1026.

Here, the proposed settlement was reached only after undertaking a robust factual and legal investigation into Defendant's pay structures and wage and hour policies. These efforts culminated in the Parties reaching an agreement to settle. The settlement amount takes into consideration the risks with regard to certifying Plaintiffs' claims, as well as difficulties associated with prevailing on the merits. In light of these risks, the settlement amount is well within the ballpark of reasonableness.

### b. *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2001), Factors are Not Present Here

In *Bluetooth,* the Ninth Circuit articulated factors that need to be considered, especially where a settlement has been reached prior to formal class certification. *In re Bluetooth Headset Products Liability Litigation* ("*Bluetooth*"), 654 F.3d 935, 946 (9th Cir. 2011). As such, settlement agreements reached prior to class certification must withstand a higher level of scrutiny for signs of collusion or other conflicts of interest than ordinarily required under Rule 23(e). The three signs *Bluetooth* instructs trial courts to look for are:

1.    When class counsel receives a disproportionate distribution of the

settlement, or when the class receives no monetary distribution but counsel is amply rewarded;

2.    When the parties negotiate a 'clear sailing' arrangement providing for the payment of attorney's fees separate and apart from class funds without objection by defendant;

3.    When the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund. *Id* at 947.

This settlement passes the *Bluetooth* test. This settlement was not driven by attorneys' fees, and Class Counsel is not receiving a disproportionate distribution of the settlement. The NSA is more than two and a half (2.5) times larger than the fees requested by Class Counsel, which is the accepted federal benchmark of 25% of the GSA. Class Counsel is requesting $175,000 (25% of the GSA); the NSA is approximately $478,675.64. Additionally, although the settlement agreement states that Defendant will not object to attorney fees up to 25% of the GSA, any amount requested by Class Counsel and not awarded by the Court shall become part of the NSA and be available for distribution to Participating Class Members. Further, 100% of the NSA will be paid out to Participating Class Members as there is no reversion to Defendant. Accordingly, unlike the settlement agreement in *Bluetooth,* the instant settlement cannot be said to arouse suspicion of collusion.

### i.    The Settlement is Fair

When evaluating the settlement terms for purposes of ruling on whether to finally approve it, the Court is to review the strength of a plaintiff's case, including "the probable outcome of a trial on the merits of liability and damages as to the claims, issues, or defenses of the class and individual class members." *Van Ba Ma v. Covidien Holding, Inc.*, 2014 U.S. Dist. LEXIS 76359, *6-7 (C.D. Cal. 2014) (*citing Marshall v. Holiday Magic*, *Inc.*, 550 F.2d 1173 (9th Cir. 1977)). In ruling on final approval, the "fairness hearing is not to be turned into a trial or a rehearsal for trial on the merits." *Id.* (*quoting Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

There is no standard or benchmark for determining whether a settlement is fair. "Ultimately the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice v. Civil Service Comm. of City and County of San Francisco*, 688 F. 2d 615, 625 (9th Cir. 1982). A court should weigh the benefits that the settlement will realize for the class against the uncertainty of litigation and the possibility that the class members would obtain no relief in the absence of a settlement. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("...it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."); *see also Hanlon*, 150 F.3d at 1026 (When considering the fairness of a proposed class settlement, courts consider the strength of a plaintiff's case against the risk, expense, complexity and likely duration of further litigation.).

The liability questions in this case touched on California's wage and hour laws, which touched on the ever-changing legal landscape. Plaintiffs argue that Defendant's wage statements fail to comply with the requirements of California Labor Code §226(a), as they fail to itemize the total hours worked each pay period, the applicable hourly rate for all hours worked, and the beginning of the pay period. Plaintiffs contend that employees cannot determine whether they were paid for all time worked and exactly what hours should be included in each check. Defendant contends that its paystubs comply with the standard set forth in *Hernandez v. BCI Coca-Cola Bottling Company, Inc.*, 554 Fed. Appx. 661 (9th Cir. 2014), Labor Code § 226, and thus are fully compliant. (Declaration of David Mara, Esq., in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Mara Dec."), ¶ 2).

Plaintiffs also contend Sealed Air failed to provide duty-free 30-minute meal periods to employees, as employees had to go through security systems to re-enter the facility and stand in line to clock back in from their meal breaks. However, Sealed

Air contends its policies provide legally compliant duty-free meal periods, that made meal periods available to all non-exempt employees. Defendant also argues that it provides employees with break rooms, and that if employees choose to leave the facility, they merely have to punch out of a security system similar to an alarm system. Defendant further argues that there is no California law determining that time spent waiting in line to clock into work is time spent under the "control" of the employer. (Mara Dec. ¶ 3).

Similarly, Plaintiffs based their unpaid wages claim off of the time it took employees to enter and exit the facility, claiming that employees were under Defendant's control going through security to enter and exit the building. However, Defendant's Rule 30(b)(6) witness testified – and the documents produced in the litigation supported – that Defendant pays additional 15 minutes of wages to its employees each day, which compensated them for any time spent entering and exiting the facility. In addition, Defendant argued that employees entered and exited the facility seamlessly, with only the first reporting employee required to punch into security, which would allow the following employees access to the facility. Thus, Defendant argued it owed no wages to its employees, as it pays them an additional 15 minutes per day and they had no opportunity to incur waiting time to enter and exit the facilities. Plaintiffs' claims for waiting time penalties were derivative and dependent upon the strength of their unpaid wages claims. Because it appeared likely that Sealed Air would not owe wages under Plaintiffs' theory of liability, it seems also likely Sealed Air would not be liable for waiting time penalties under Labor Code § 203. (Mara Dec. ¶ 4).

Plaintiffs also contend Defendant failed to authorize full net 10-minute rest breaks in a suitable resting facility, in violation of the IWC Wage Orders. Defendant argues that it provides legally compliant duty-free 15-minute breaks that comport with the requirements set forth in *Brinker* and provides its employees with break

rooms in each of its facilities. Defendant further argues that nothing in the Wage Orders or California law requires a policy to include the word "net" in order to be lawful. Plaintiffs further contend Defendant has a policy prohibiting employees from leaving company premises while clocked in, with no abatement of this policy during rest breaks, in violation of Labor Code § 226.7, *Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257 and *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004. Defendant contends Plaintiffs are misinterpreting a policy intended to discourage employees from abandoning their shifts. Defendant argues employees are provided with duty-free 15-minute rest breaks and that employees may leave the company premises during rest breaks, constrained only by the time limits inherent in the 15-minute break. Further, Defendant argues, even if the policy was interpreted in the manner argued by Plaintiffs, that nothing in *Augustus* addresses whether a prohibition on leaving a facility constituted "control" during a rest break. (Mara Dec. ¶ 5).

In some cases, these theories of recovery have been found to insinuate individual questions as to the circumstances surrounding why each individual believed the company prevented them from taking meal and rest breaks the policies purport to make available. *See In re Taco Bell Wage & Hour Actions* (E.D. Cal. 2016) 2016 U.S. Dist. LEXIS 48577 * 20; *Guinn v. Sugar Transport of the Northwest, Inc.* (E.D. Cal. 2017) 2017 WL 6513306 *7 (commonality not met when an inquiry would have to be made as to why each individual did not take their breaks at scheduled times); *Stiller v. Costco Wholesale Corp.* (S.D. Cal. 2014) 298 F.R.D. 611, 626 (certification denied where the policy at issue did not automatically trigger liability); *White v. Starbucks Corp.,* (N.D. Cal. 2007) 497 F.Supp.2d 1080, 1089 ("employee must show that he was forced to forego his meal breaks as opposed to merely showing that he did take them regardless of the reason"); *Cortez v. Best Buy Stores* (C.D. Cal. Jan. 25, 2012) 2012 WL 255345 ("each employee would have to testify as to what

she was told…by her specific manager [regarding when to take breaks]"; *Lanzarone v. Guardsmark Holdings, Inc.* (C.D. Cal. 2006) 2006 WL 4393465 *7 ("[i]f a claim is based substantially on oral rather than written communications, class action is inappropriate as a matter of law."); *Ugas v. H&R Block Enters., LLC* (C.D. Cal. July 9, 2012) 2012 WL 5230297 *5 (denying certification where individual inquiries into meal break practices would predominate rather than written policies).

Plaintiffs also investigated a claim for unreimbursed business expenses based on personal cellphone use for business purposes. Plaintiffs claimed they were forced to use their cellphones to communicate with co-workers and their employer due to the size of the warehouse facilities they worked in. Defendant argued this was more a matter of the employee's convenience, rather than necessity and any such use was unreasonable. *See Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 568 (whether an expense is necessary depends on the reasonableness of the employee's choices). (Mara Dec. ¶ 6).

Moreover, Plaintiffs' PAGA claims are based on the same alleged unlawful conduct as their class claims. Therefore, PAGA penalties could only be awarded if the factfinder agreed with Plaintiffs' theories of liability. Should the Court agree with any of Defendant's defenses to certification or on the merits, the potential exposure for PAGA would be reduced and any associated PAGA penalties would be extinguished, as penalties can only be awarded if the Court agrees with Plaintiffs' underlying allegations. Further, these penalties would be duplicative of the recovery from the underlying violations. Therefore, Plaintiffs recognize and reasonably believe the Court would significantly reduce any PAGA penalties if Defendant was determined to be the employer and found liable for the underlying Labor Code violations. (Mara Dec. ¶ 7).

Although Plaintiffs remain confident in the strength of their claims and believe this case is suitable for certification on the claimed basis there are company-wide

policies that Plaintiffs contend violate California law and uniformly affect all non-exempt employees, Defendant's counter-arguments raise uncertainties with respect to both class certification and success on the merits. This settlement represents a well-crafted compromise of the divergent positions of the Parties that provides substantial benefits for the Class. Each side evaluated the strengths and weaknesses of their case and independently concluded that this settlement represents a responsible means of addressing Plaintiffs' claims and Defendant's defenses. (Mara Dec. ¶ 8).

Another factor considered by some courts in approving a settlement is the complexity, expense and likely duration of the litigation. *Morey v. Louis Vuitton N. Am., Inc.*, 2014 WL 109194, *5 (S.D. Cal. Jan. 9, 2014); *In re MRV Communs., Inc. Derivative Litig.*, 2013 WL 2897874, *2 (C.D. Cal. June 6, 2013). In applying this factor, a court should weigh the benefits of the settlement against the expense and delay involved in achieving an equivalent or even more favorable result at trial. *Lane v. Facebook, Inc.*, 2010 WL 9013059, *5 (N.D. Cal. March 17, 2010). Here, litigating the case through to trial would have been expensive, required numerous hours of work, involved substantial risk, and would not have been fully resolved for years. In contrast, the proposed settlement provides significant and certain compensation that is available now as opposed to potentially and hypothetically sometime in the distant future.

Finally, employment cases (including wage and hour cases) can be expensive and time-consuming to prosecute. The alternative to a class settlement – *i.e.*, individual litigation – would tax private and judicial resources over a period of years. As such, the settlement in this case is consistent with the "overriding public interest in settling and quieting litigation" that is "particularly true in class action suits" and thus, provides another reason to approve the settlement. *Eisen v. Porsche Cars North America, Inc.,* 2014 WL 439006 at *3 (C.D. Cal. Jan. 30, 2014); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 2013

U.S. Dist. LEXIS 123298, *253-54 (C.D. Cal. July 24, 2013); 4 Newberg § 11.41 at 87-89.

### c. Sufficient Discovery and Investigation Has Occurred

Plaintiffs in this matter propounded special interrogatories and demands for production of documents to which Defendant responded. Defendant produced nearly a thousand documents. These documents were comprised of its wage and hour policies, including meal and rest breaks, time keeping policies, time and wage records, and its business organization charts. On June 20, 2019, Defendant took Plaintiff Martinez's deposition and on July 12, 2019, Plaintiffs took the deposition of Defendant's Rule 30(b)(6) witness, Teri Montero. (Mara Dec. ¶ 9).

### d. Class Counsel Are Experienced

Class Counsel has and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement requires "that the representative party's attorney be qualified, experienced, and generally able to conduct the litigation." *In re Surebeam Corp. Secs. Litig.*, 2004 WL 5159061, *5 (S.D. Cal. 2004). In this case, Class Counsel from Mara Law Firm, PC, Bradley/Grombacher, LLP, and United Employees Law Group, PC, meet this standard and have been appointed class counsel in numerous class actions. (*See* Declarations filed in support of Plaintiffs' Motion for Attorneys' Fees, Costs, and Class Representative General Release Payments).

### e. The Class Members' Response to the Settlement is Further Evidence that the Settlement is Fair and Reasonable

The Ninth Circuit has held that the number of class members who object to a proposed settlement is a factor to be considered in determining a settlement's fairness. *Mandujano v. Basic Vegetable Products, Inc.*, 541 F.2d 832, 837 (9th Cir. 1976). To date, not a single Class Member has objected to the settlement nor requested to be excluded from the settlement. (Hernandez Dec. ¶¶ 12, 13). The lack

NOTICE OF MOTION & MOTION FOR
FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

12

CASE NO. 2:18-CV-09881-DSF-GJS

of objections and requests for exclusion evidence the Class Members' endorsement of this non-reversionary settlement. Additionally, Plaintiffs will file a Supplemental Brief in Support of Motion for Final Approval on February 28, 2020 providing the Court with the final number of objections and requests for exclusion, should any occur, prior to the response deadlines of February 6, 2020 and February 24, 2020. (Hernandez Dec. ¶¶ 12, 13).

**f. The Court Should Approve of The Settlement Administration Fee**

The Parties agreed to hire ILYM Group, Inc. to be the Settlement Administrator, a choice the Court approved in conjunction with granting preliminary approval. ILYM Group, Inc. was responsible for mailing the Class Notice to Class Members, obtaining better addresses for undeliverable notices of settlement, responding to Class Member inquiries, providing weekly status reports to all counsel, receiving all communications from the Class Members, and providing a declaration documenting its duties and responsibilities to ensure the Class Members were given notice of the Settlement. (Hernandez Dec. ¶ 16). Following the grant of final approval, ILYM Group, Inc. will continue to calculate the payments to Participating Class Members, calculate the withholding taxes, and transmit to the appropriate government agencies, send the individual Settlement Shares to Participating Class Members, distribute other payments ordered by the Court, follow up with un-cashed checks, and perform such other duties as described in the settlement agreement. (Hernandez Dec. ¶ 3). ILYM Group, Inc.'s fee of $15,000 for services rendered and to be rendered is fair and reasonable and should be granted. (Hernandez Dec. ¶ 16).

/ / /

/ / /

/ / /

/ / /

/ / /

1    / / /

2    / / /

3    **V. CONCLUSION**

4        In light of the foregoing, Plaintiffs request the Court find the settlement fair,

5    reasonable, and adequate and grant this Final Approval Motion. Plaintiffs further

6    requests that the Court enter final judgment.

7

8    DATED: January 30, 2020          **MARA LAW FIRM, PC**

9                          */s/ David Mara*

10                          David Mara, Esq.

11                          Jill Vecchi, Esq.
                      Attorneys for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28    NOTICE OF MOTION & MOTION FOR      14      CASE NO. 2:18-CV-09881-DSF-GJS
FINAL APPROVAL OF CLASS
ACTION SETTLEMENT